## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIN MILES<br>45 East College Avenue<br>Yardley, PA 19067<br><br>　　　　　Plaintiff,<br>v.<br><br>CENLAR *d/b/a* CENLAR FSB<br>425 Phillips Blvd.<br>Ewing, NJ 08618<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Erin Miles (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Cenlar *d/b/a* Cenlar FSB (*hereinafter* "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that she was discriminated against and unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. Cenlar *d/b/a* Cenlar FSB is incorporated under the laws of New Jersey with headquarters and/or principal places of business in same, rendering it a citizen of New Jersey.

4. This Court, in accordance with 28 U.S.C. 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of New Jersey, and the amount in controversy exceeds $75,000.

5. This action is also being initiated pursuant to federal laws (ADA and FMLA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is an adult individual, with an address as set forth in the caption.

11. Cenlar *d/b/a* Cenlar FSB is a national loan servicing provider, headquartered at the address in the above-caption. Plaintiff was hired and worked out of this address.

12. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was employed by Defendant for approximately 5 years, from on or about January or 2015 until her unlawful termination (as discussed *infra*) on or about December 10, 2019.

15. While in the employ of Defendant, Plaintiff was a very versatile employee who worked in numerous positions; but as of her termination, she was employed in a Default Compliance role.

16. Plaintiff was primarily supervised by Matthew Devilla (*hereinafter* "Devilla").

17. Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job well.

18. Plaintiff has and continues to suffer from several disabilities, including but not limited to anxiety, depression, and other health complications.

19. As a result of her aforesaid disabilities, Plaintiff experiences fatigue, sleeplessness, and fearfulness which (at times) limit her ability to perform some daily life activities, including but not limited to sleeping, focusing, and working (among other daily life activities).

20. Despite her aforesaid health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable accommodations while employed with Defendant (discussed further *infra*).

21. For example, Plaintiff requested and was approved for a medical leave of absence from October of 2019 through on or about December 9, 2019, to care for and treat her aforesaid health conditions. Plaintiff was under the impression that that this medical leave was also protected under the Family and Medical Leave Act ("FMLA").

22. Throughout her aforesaid medical leave of absence, Plaintiff kept Defendant's management and Human Resource ("HR") Manager, Charline Colon (*hereinafter* "Colon") apprised of the status of her aforesaid medical conditions and confirming her need for medical leave.

23. For example, on or about December 1, 2019, while still out on medical leave, Plaintiff became very ill (from respiratory and other medical complications), prompting her to go to Urgent Care.

24. Due to incapacitation from the aforesaid respiratory illness (*see* Paragraph 23, *supra*) and separately for continuing complications from anxiety and depression, the Urgent Care physician mandated that Plaintiff not return to work until December 16, 2019.

25. Plaintiff left several messages notifying HR of her need for a brief extension of her medical leave (*see* Paragraph 24, *supra*) and drove to the office to provide doctor's notes for same;

4

however, security would not let her in the building, and despite the security guard informing HR that she was there, no one came out to collect her doctor's notes and medical documentation.

26. Plaintiff's request of a very brief 5-business day extension of her approved medical leave of absence until on or about December 16, 2019, was clearly a reasonable accommodation under the ADA.[1]

27. Nonetheless, instead of engaging in any good faith interactive process about Plaintiff's requested very short 5-business day extension of her medical leave, Defendant abruptly terminated Plaintiff by letter dated December 10, 2019 for not returning to work on December 9, 2019.

28. Plaintiff believes and therefore avers that she was terminated because of (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations; and/or (4) Defendant's failure to properly accommodate her.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities, including but not limited to, sleeping, focusing, and working (among other daily life activities).

---

[1] It is well established that days, weeks, or months off from work for medical treatment are "reasonable accommodations." *See e.g. Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F.Supp.2d 694, 701 (E.D. PA 2010)(time off from work, even up to 3 months can constitute a reasonable accommodation under anti-discrimination statutes); *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004)(federal courts have permitted medical leave to be a reasonable accommodation); *Shannon v. City of Philadelphia*, Civil Action No. 98-5277, *22-23, 1999 U.S. Dist. LEXIS 18089, at * (E.D. Pa. Nov. 23, 1999)(time off from work for an extended period of time is a reasonable accommodation).

31. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

32. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

33. Plaintiff requested reasonable accommodations from Defendant, including but not limited to block medical leave to care for and treat her aforesaid health conditions.

34. Plaintiff was abruptly terminated from her employment with Defendant in close proximity to her requests for/utilization of reasonable accommodations, i.e. a very short 5-business day extension of her block medical leave.

35. Prior to abruptly terminating Plaintiff, Defendant failed to accommodate Plaintiff by failing to engage in any good-faith interactive process about a very short 5-business day extension of her medical level.

36. Plaintiff believes and therefore avers that she was terminated from her employment with Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations; and/or (4) Defendant's failure to properly accommodate her.

37. These actions aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the New Jersey Law Against Discrimination (NJ LAD)**
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT III
### Violations of the Family and Medical Leave Act ("FMLA")
(Interference & Retaliation)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

42. Plaintiff requested leave from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

43. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

44. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

45. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

46. Plaintiff requested block FMLA-qualifying leave from Defendant in close proximity to her termination.

47. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-

qualifying leave in the future; and (5) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

48. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**

                        By: _____

                                        Ari R. Karpf, Esq.
                                        3331 Street Rd.
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
Dated: February 26, 2020               (215) 639-0801